## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **SARAH GRASSO,** | ) | |
| **4111 South Four Mile Run Drive** | ) | |
| **Unit 202** | ) | |
| **Arlington, Virginia 22204 ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. _____** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHARIOTS FOR HIRE, INC.,** | ) | |
| **21606 Cedar Lane** | ) | |
| **Sterling, Virginia 20166,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **M AND C ENTERPRISE, INC.,** | ) | |
| **13164 Lazy Glen Lane** | ) | |
| **Oak Hill, Virginia  20171** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **MICHAEL P. FORTKORT, COURTNEY** | ) | |
| **J. WEST, JEFFREY T. DAUSCH, NICK** | ) | |
| **LOPES, and DOUG VANCE,** | ) | |
| **In their corporate and individual capacities,** | ) | |
| **13164 Lazy Glen Lane** | ) | |
| **Oak Hill, Virginia 20171** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

## COMPLAINT
(Personal Injury and Violation of Federal Law)

### Introduction

1.      Plaintiff Sarah Grasso brings this action against defendant M and C Enterprises, Inc., doing business as Chariots for Hire, Inc., to redress violations of Title III of the Americans with

Disabilities Act of 1990 and the Rehabilitation Act, as well as unlawful tortious acts committed

against her by defendants via their employees and agents, for whose actions defendants are liable.

## Jurisdiction

2.      This Court subject matter jurisdiction over this civil action  pursuant to 28 U.S.C. § 1331,

as this action arises under the laws of the United States, thereby presenting a federal question.

3.      This Court has supplemental jurisdiction over plaintiff's state law claims pursuant

to 28 U.S.C. § 1367(a).

## Venue

4.      Venue is proper in the United States District Court for the District of Columbia pursuant to

28 U.S.C. § 1391(b), as the events giving rise to plaintiff's claims occurred in this judicial district,

and the defendants conduct substantial business in this judicial district.

## Parties

5.      Plaintiff Sarah Grasso is a citizen of the United States and a resident of the Commonwealth

of Virginia.

6.      Defendant, M and C Enterprise, Inc., d/b/a Chariots for Hire, Inc., is a corporation

duly organized and existing under the laws of the Commonwealth of Virginia.  It is authorized

to do business and is doing substantial business within the District of Columbia, within the

territorial jurisdiction of this Court. Specifically, defendant is engaged in the business of

providing chauffeured transportation services within the District of Columbia and the

surrounding metropolitan area.

7.      Defendant Michael P. Fortkort, an individual, is a co-owner and identified by the

Commonwealth of Virginia State Corporation Commission as the President of M and C Enterprise,

Inc. At all relevant times, Mr. Fortkort exercised operational control over the company, to include overall management responsibilities.

8.    Defendant, Courtney J. West, an individual, is a co-owner and identified by the Commonwealth of Virginia State Corporation Commission as the Secretary of M and C Enterprise, Inc. At all relevant times, Mr. West exercised operational control over the company, to include management responsibilities.

9.    Defendant, Jeffrey T. Dausch, an individual, is a co-owner and identified by the Commonwealth of Virginia State Corporation Commission as the as the Treasurer of M and C Enterprise, Inc. At all relevant times, Mr. Dausch exercised operational control over the company, to include management responsibilities.

10.    Defendant, Nick Lopes, an individual and identified by the Commonwealth of Virginia State Corporation Commission as the as a Director of M and C Enterprise, Inc. At all relevant times, Mr. Lopes exercised operational control over the company, to include management responsibilities.

11.    Defendant, Doug Vance, an individual and identified by the Commonwealth of Virginia State Corporation Commission as the as a Director of M and C Enterprise, Inc. At all relevant times, Mr. Vance exercised operational control over the company, to include management responsibilities.

## Statement of Facts

12.    Sarah Grasso is an American Sign Language (ASL) interpreter, who often provides interpreter services as a contractor at agencies of the federal government in the Washington, D.C., area.

13.    Ms. Grasso is diagnosed with post-traumatic stress disorder (PTSD), which entails susceptibility to anxiety and panic attacks. PTSD is a disability under the Americans with Disabilities Act (ADA) as it substantially limits one or more of Ms. Grasso's major life activities.

*See* 42 U.S.C. § 12102 (1) ("the term 'disability' means, with respect to an individual (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment").

14.     Due to her PTSD disability, Ms. Grasso is regularly accompanied by her service animal, a dog who is fully trained and certified to perform specific tasks to mitigate the adverse effects of Ms. Grasso's disability.  Ms. Grasso's service dog is specifically trained to operate off-leash.

15.     On November 21, 2017, Ms. Grasso was at the U.S. Agency for International Development (USAID), in the SA-44 building located at 301 4th Street, SW in her capacity as an ASL interpreter. She was requried to travel from there to the USAID offices at the Ronald Regan Building, located at 1300 Pennsylvania Avenue, NW in order to obtain a contractor badge.  Defendant company, M and C Enterprise, Inc., doing business as Chariots for Hire, provided a shuttle service between the two buildings which Ms. Grasso attempted to use on this occasion.

16.     Ms. Grasso was accompanied by her service animal when she boarded the Chariots for Hire shuttle bus at approximately 1:30 p.m. on November 21, 2017.  The dog was wearing a vest which clearly indicated he was a service animal.

17.     Shortly after Ms. Grasso took her seat in the front, the driver of the bus told her that her dog was not allowed on the bus.  Ms. Grasso informed the driver that her dog is a certified service animal, and as such, was allowed to ride on the bus with her.  The driver then demanded to see proof that Ms. Grasso's dog was a certified service animal.  This demand on the driver's part was unlawful under the Americans With Disabilities Act (ADA).  Indeed, ADA guidance provided by the Department of Justice's Office of Civil Rights specifically states,

When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.[1]

18.     Despite being advised that Ms. Grasso was indeed permitted to have her service animal with her, the driver continued to berate Ms. Grasso and insist that no animals were allowed on the bus, including hers. Because of his aggression toward her, and his refusal to cease his discriminatory abuse, Ms. Grasso began to feel unsafe and fearful for her health.

19.     At this point, Ms. Grasso began to take video and audio recording of the driver's conduct and their exchange. The recording reflects that Ms. Grasso advised the driver she was recording, and that she advised him that he was illegally discriminating against her as person with a disability by not allowing her on the bus with her service animal. The driver continued to insist on seeing "proof" that Ms. Grasso was permitted to have her service animal - though such a demand is unlawful - and even used insulting language toward her, such as telling her she was "rude" simply for insisting that she rightfully be allowed to ride the shuttle bus in peace to her place of employment with her well-trained and certified service animal.

20.      In the course of the exchange, a Program Manager with the contractor who was employing Ms. Grasso intervened and also attempted to get the driver to see reason – i.e. that Ms. Grasso's dog was quite obviously a service animal wearing a well-marked vest, and as such, was allowed on the shuttle bus. However, the driver would not see reason and continued to harass Ms. Grasso.

21.     On Ms. Grasso's recording, it can be heard that the driver's conduct caused extreme exacerbation of Ms. Grasso's PTSD symptoms; in particular, it can plainly be heard that her speech

---

[1]This guidance may be viewed online at https://www.ada.gov/service_animals_2010.htm.

became stuttered and interrupted, which is a well-known indicator of PTSD symptoms and of an imminent panic attack.

22.    Eventually, the driver stated he would not move the bus until Ms. Grasso's service dog was removed.  At that point, Ms. Grasso ceased her recording.  She was now on the verge of a panic attack due the driver's unreasonable, harassing, and discriminatory conduct toward her.  Ms. Grasso rushed off the bus and back into the SA-44 building, where security personnel telephoned emergency medical services (EMS) for her.  Immediately after this call was made, Ms. Grasso's condition progressed to a full-blown panic attack.  She fell onto the floor of the building screaming.  She had lost sight, verbal comprehension, and the ability to stand, and was experiencing extreme tremors.  Security officers and others surrounded Ms. Grasso and attempted to render assistance.

23.    After about 30 minutes, EMS services arrived and placed Ms. Grasso on a stretcher and into the back of an ambulance.  Among other symptoms observed by EMS, Ms. Grasso's heart rate was extremely elevated, and measured at 175 beats per minute.

24.    Ms. Grasso's associate, Jordan Stokes, retrieved her about 30 minutes later.  Mr. Stokes subsequently spoke with the supervisor of Chariots for Hire via telephone and text message, and the manager conceded that the driver had, in fact, not been following policy when he kicked Ms. Grasso off the shuttle because she has a disability and requires the assistance of a service animal.  .

25.    The driver's intentional and/or reckless actions toward Ms. Grasso were extreme and outrageous.  Such actions induced a severe panic attack in Ms. Grasso, and caused her to miss her scheduled appointment to provide interpreter services, thereby adversely affecting her livelihood.  Such actions furthermore caused Ms. Grasso extreme emotional, physical, and mental suffering.

## Statement of Claims

### Count I - Americans With Disabilities Act

26.     Defendant employees and/or agents unlawfully discriminated against Ms. Grasso on the basis of disability by denying her the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation in violation of Title III of the Americans with Disabilities Act of 1990,  42 U.S.C. § 12182.

### Count II - Rehabilitation Act

27.     Defendant employees and/or agents unlawfully excluded Ms. Grasso from access to the benefits of a federal building and discriminated against her under a program receiving federal financial assistance solely because of her disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

### Count III - Intentional Infliction of Emotional Distress

28.     Defendant employees and/or agents subjected Ms. Grasso to intentional infliction of emotional distress, as their actions toward her were extreme and outrageous, intentional or reckless, and caused Ms. Grasso severe emotional suffering.

29.     Defendants are liable for the actions of their employees and/or agents described herein under the doctrine of *respondeat superior*, as all actions were taken in the scope of their employment with Chariots for Hire.

30.     As a direct and proximate result of these tortious, discriminatory, and unlawful acts committed by defendants against Ms. Grasso, Ms. Grasso has suffered and continues to suffer injuries in the form of severe emotional distresses, physical pain and suffering, fear, anxiety, loss of enjoyment of life, exacerbated PTSD symptoms, personal and professional humiliation and

embarrassment, interference with professional opportunities, as well as other emotional distress and pain and suffering.

### **Prayer for Relief**

WHEREFORE, plaintiff prays that this Court enter judgment in her favor and against defendant on the claims of unlawful discrimination and intentional infliction of emotional distress, and provide her with the following relief:

(a)     award plaintiff compensatory damages against defendant in the amount of $500,000.00, plus interest thereon;

(b)     award plaintiff punitive damages against defendant in the amount of $500,000.00, plus interest thereon

(c)     enjoin defendant and its employees and agents from harassing plaintiff in the future at any facility where defendant provides transportation services;

(d)     award plaintiff reasonable attorneys' fees and costs associated with bringing and maintaining this civil action pursuant to 42 U.S. Code § 12205 and 29 U.S.C. § 794a; and

(e)     award plaintiff such other and further relief as the interests of justice may require.

### **Jury Demand**

Plaintiff hereby requests a trial by jury on all issues of fact, including the measure of damages.

Respectfully submitted,

 /s/
David H. Shapiro / D.C. Bar No. 961326
J. Cathryne Watson / D.C. Bar No.1032640
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W., Suite 205
Washington, DC 20005
Tel (202) 842-0300 / Fax (202) 842-1418
Email - dhshapiro@swickandshapiro.com

jcwatson@swickandshapiro.com
Attorneys for Plaintiff